CHARLIE TILLMAN FREEMAN v. GRACE TURLINGTON FREEMAN

No. 9111DC822

(Filed 20 October 1992)

1. **Divorce and Separation § 131 (NCI4th)— equitable distribution—workers' compensation—marital property**

The trial court erred in an equitable distribution action by classifying the husband's lump sum workers' compensation settlement as the separate property of the husband where the wife offered an affidavit that the husband received the award three months prior to the separation; the husband presented no evidence regarding the portion of the award, if any, which represented compensation for loss of earning capacity during the marriage versus after the separation, and

FREEMAN v. FREEMAN

[107 N.C. App. 644 (1992)]

there was no evidence that the husband contended that any portion of the award represented compensation for pain and suffering. Although the trial court erred by holding that the entire award was separate property, the case was remanded in light of the fact that this opinion set out for the first time the proper procedure for the allocation of workers' compensation awards.

**Am Jur 2d, Divorce and Separation §§ 879, 892, 914, 930, 937.**

**Equitable distribution doctrine. 41 ALR4th 481.**

2. **Divorce and Separation § 155 (NCI4th)— equitable distribution — marital home — security system — installed post-separation — separate expense**

The trial court did not abuse its discretion in an equitable distribution action by failing to give the wife credit for approximately $3500.00 expended for a security system for the marital home where the wife contended that the expense was incurred in light of the husband's conduct. The trial court considered the wife's evidence regarding the money spent by the wife on the installation of a security system and found that it was for her own use after the date of the separation and not to maintain the marital home.

**Am Jur 2d, Divorce and Separation §§ 879, 892, 914, 930, 937.**

**Equitable distribution doctrine. 41 ALR4th 481.**

3. **Divorce and Separation § 127 (NCI4th)— equitable distribution — automobile — purchased after separation — marital funds — marital property**

The trial court in an equitable distribution action properly classified a car as marital property subject to equitable distribution even though it was purchased after the separation where the court found that the funds used for the purchase of the car were marital and the evidence supports that finding. N.C.G.S. § 50-20(b)(1).

**Am Jur 2d, Divorce and Separation §§ 879, 892, 914, 930, 937.**

**Equitable distribution doctrine. 41 ALR4th 481.**

FREEMAN v. FREEMAN

[107 N.C. App. 644 (1992)]

**4. Divorce and Alimony § 136 (NCI4th) — equitable distribution — automobile — amount of marital funds used in purchase**

The trial court did not err in an equitable distribution action in valuing the husband's car at $14,500 where the husband testified that he used $15,000 in marital funds toward its purchase, but the sales contract showed that the purchase price actually paid by the husband was $14,500, $13,500 in cash and $1,000 financed. The court's finding was supported by competent evidence in the record.

**Am Jur 2d, Divorce and Separation §§ 879, 892, 914, 930, 937.**

**Equitable distribution doctrine. 41 ALR4th 481.**

**5. Divorce and Alimony § 143 (NCI4th) — equitable distribution — equal distribution of marital property — no abuse of discretion**

The trial court did not abuse its discretion in an equitable distribution action by ordering an equal distribution of marital property even though the husband contended that an uneven division was supported by the husband's contribution to the wife's educational accomplishments, the husband's retirement due to medical necessity, and the husband's post-separation rent and utility payments. The court found that the wife's educational accomplishments were substantial but did not require large expenditures of money from accumulated savings or from the husband's current income, that the husband was capable of supporting himself if required to do so by financial reasons, and that the husband's post-separation living expenses did not require an unequal division of the marital property.

**Am Jur 2d, Divorce and Separation §§ 879, 892, 914, 930, 937.**

**Equitable distribution doctrine. 41 ALR4th 481.**

APPEAL by defendant and cross-appeal by plaintiff from order filed 28 June 1991 in LEE County District Court by *Judge William A. Christian.* Heard in the Court of Appeals 15 September 1992.

## FREEMAN v. FREEMAN
[107 N.C. App. 644 (1992)]

*Harrington, Ward, Gilleland & Winstead, by Eddie S. Winstead, III, for plaintiff-appellee/appellant.*

*Staton, Perkinson, Doster, Post, Silverman & Adcock, by Jonathan Silverman and Diane W. Stevens, for defendant-appellant/appellee.*

GREENE, Judge.

Defendant appeals and plaintiff cross-appeals from an equitable distribution order filed on 28 June 1991.

Plaintiff (Husband) is fifty-eight years old and retired. He receives retirement, pension, and social security benefits totalling $913.37 per month. Defendant (Wife) is fifty-six years old and is employed as a clerk in the business office of Moore Regional Hospital where she earns $21,000.00 per year. Husband and Wife were married on 23 December 1955. During the marriage, Husband was employed by GKN Automotive as an assembly worker. Wife worked in the Lee County school system and as a bank teller. Wife also earned an associate's degree, a bachelor's degree, and a Masters in Business Administration over a ten-year period during the marriage at a total cost of less than $10,000.00, which, according to Wife, was paid from interest earned on funds received from the sale of a tract of land owned jointly by Husband and Wife.

On 6 August 1985, Husband suffered a work-related injury to his right hand for which he made a workers' compensation claim. The claim was accepted as compensable, and Husband received payment of all medical bills and expenses and benefits for temporary total disability while out of work. On 19 July 1988, Husband's doctor determined that Husband had reached his maximum medical improvement and rated Husband as having a forty percent permanent disability of the right hand. On 8 February 1989, Husband entered into an agreement for a final compromise and release of his workers' compensation claim with his employer and its insurance company. Pursuant to this agreement, Husband received a lump sum payment of $32,500.00 in March, 1989, as compensation for permanent partial disability of his right hand, plus payment of all medical bills and expenses incurred for treatment of his injuries from the date of Husband's maximum medical improvement up to the date of the agreement. Husband deposited the settlement proceeds into a certificate of deposit at Wachovia Bank and Trust Company in Sanford. The record does not reveal whether the cer-

tificate of deposit was in Husband's name only or in the names of both Husband and Wife. In her brief, Wife states that Husband placed the funds in an "individual account."

On 24 May 1989, approximately three months after Husband's receipt of the workers' compensation settlement, Husband and Wife separated. At the time of the parties' separation Husband was unemployed, having permanently retired from employment on 1 January 1987 due to various health problems. Husband remained in the jointly owned marital home located on 108 acres of land. Husband filed a complaint on 17 September 1989 seeking divorce from bed and board, equitable distribution of marital property, and sole possession and use of the marital residence. On 14 November 1989, Wife filed a counterclaim seeking dismissal of Husband's claim, divorce from bed and board, sole and exclusive use of the marital residence, and equitable distribution.

At the time of separation, Husband and Wife jointly owned a fifty-eight acre tract of land in another area of the county which had been leased for farming purposes. After separation, Husband unilaterally began cutting timber from the tract. Husband received $15,500.00 from the sale of the timber, of which, according to Husband's testimony, $15,000.00 was used by Husband to purchase a 1990 Oldsmobile. The automobile contract of sale indicates that Husband made a cash downpayment of $13,500.00 toward the purchase of the car and financed $1,000.00. Wife purchased a 1989 Toyota after the parties' separation, using $21,700.00 of funds taken from a certificate of deposit owned by the parties. On 11 March 1990, Wife filed a motion for injunctive relief in order to stop Husband from cutting the timber, and a temporary restraining order was entered the same day. This order was extended on 19 March 1990, and the parties resolved their agreement regarding the timber by consent order entered in April, 1990, pursuant to which Husband agreed to vacate the marital residence, giving Wife sole possession, and Wife agreed to withdraw her motion for injunctive relief. The order stated that at the time of equitable distribution, the trial court could consider Husband's expenses incurred living outside the marital home and Wife's expenses in maintaining the marital home.

When Wife attempted to return to the marital residence, she discovered that Husband had barricaded all of the doors. Wife had to obtain the services of a locksmith to gain entry. After

FREEMAN v. FREEMAN

[107 N.C. App. 644 (1992)]

Wife moved in, Husband came to the marital residence with a sledgehammer and attempted to smash in the front door. Wife thereafter obtained a domestic violence restraining order against Husband. During the time that Wife was living in the marital residence pursuant to the consent order, she expended approximately $1,500.00 for miscellaneous repairs and maintenance of the residence and approximately $3,500.00 for the installation of a security system in the home. Husband moved in with his brother, to whom he paid $300.00 per month for rent and utilities.

On 25 May 1990, Husband filed an action for absolute divorce and equitable distribution of the marital property. Wife filed an answer and counterclaim seeking the same relief on 23 July 1990. The parties were granted an absolute divorce on 20 August 1990. Their equitable distribution claims were severed and consolidated for trial. After a trial, an equitable distribution order was filed on 28 June 1991. In its order, the trial court made the following pertinent findings of fact:

10. That with regard to the sum of $37,000.00 currently invested in a certificate of deposit with Wachovia Bank and Trust Company of Sanford, North Carolina, the Court finds that:

a) That the sum of $5000.00 was received as farm rent for the year 1990.

b) That said $32,500.00 was received in the settlement of a workers['] compensation claim between [Husband], his employer GKN Automotive Components and the employer's insurer, Crown Insurance Company. This amount was paid one lump sum pursuant to an agreement for final compromise and settlement and release entered into between [Husband], GKN and Royal Insurance on February 8, 1989.

c) That said proceeds were for pain and suffering, loss of use of [Husband's] arm, and permanent partial disability.

d) That prior to the entry of the settlement with the insurance carrier, said insurance company had paid all outstanding medical bills of the plaintiff, had paid his average weekly wage for loss [sic] income for a period of 48 weeks and had reimbursed [Husband] for all travel and related expenses incidental to treatment for the injury to his arm.

e) That said settlement proceeds were received by [Husband] in March, 1989, approximately two months prior to the date of separation.

The trial court concluded that the entire workers' compensation settlement is Husband's separate property. The court also found that Husband's new car was purchased after separation with marital funds and valued the car at $14,500.00; that Wife's new car was purchased after separation with marital funds and valued it at $21,700.00; that, "while [Husband] has retired he is capable of supporting himself if required to do so for financial reasons"; that "the education accomplishments of [Wife] were substantial but did not require large expenditures of money from accumulated savings or from [Husband's] current income"; and that [Husband] has expended $300.00 per month since May, 1990, as expenses for rent and utilities which "could be considered by the court pursuant to the order . . . entered April 2, 1990."

The trial court concluded that an equal division of the marital property was equitable, and, among other things, ordered the parties to each pay one-half of the approximately $1,500.00 expended by Wife in the post-separation maintenance of the marital home. The court concluded that the expenses to install the security system in the marital home "were incurred by [Wife] for her own use and satisfaction after the date of separation, and were not incurred to maintain the marital home." The court made no provision in its order for distribution of the $300.00 per month expended by Husband for rent and utilities while living with his brother. In distributing the marital property, the trial court awarded to Wife items of property valued at $330,414.00, including the marital residence and surrounding 108 acres valued at $268,375.00, and awarded to Husband items of property with a total value of $88,996.40. The court concluded that, because the value of property awarded to Wife exceeds in value the items of property awarded to Husband, "it is equitable that [Wife] pay to [Husband] . . . a distributive award in the total sum of $116,338.05 within nine months of the date of entry of this Order." From the equitable distribution order, Husband and Wife appeal.

The issues presented are (I) whether proceeds from a lump sum workers' compensation settlement received by a spouse during marriage as compensation for permanent partial disability caused

**FREEMAN v. FREEMAN**

[107 N.C. App. 644 (1992)]

by a work-related injury sustained during the marriage constitutes marital property or separate property under North Carolina's Equitable Distribution Act; (II) whether the trial court erred in (A) determining that Wife's security system expenditures do not constitute maintenance of the marital home; (B) classifying Wife's new car as marital property; and (C) valuing Husband's new car at $14,500.00; and (III) whether the trial court abused its discretion in ordering an equal distribution of the marital property.

I

[1] Wife argues that the trial court erred in classifying Husband's lump sum workers' compensation settlement as the separate property of Husband. She contends that, because the settlement proceeds were received by Husband during the marriage and prior to separation, the settlement proceeds constitute marital property.

The party claiming property to be marital has the burden of proving by a preponderance of the evidence that the property was acquired by either spouse or both spouses during the marriage and before separation and that the property is presently owned. *Atkins v. Atkins*, 102 N.C. App. 199, 206, 401 S.E.2d 784, 787 (1991). If this burden is met, then the party claiming the property to be separate must show that the property meets the definition of separate property. *Id.* at 206, 401 S.E.2d at 788. If both parties meet their respective burdens, then the property is classified as separate property. *Id.* Property acquired after separation may nevertheless be marital if the party claiming it to be marital proves by a preponderance of the evidence that the source of funds used to acquire the property is marital. *Wade v. Wade*, 72 N.C. App. 372, 382, 325 S.E.2d 260, 269, *disc. rev. denied*, 313 N.C. 612, 330 S.E.2d 616 (1985).

Whether all or any portion of a workers' compensation award constitutes the separate property of the injured spouse has never been addressed by the appellate courts of North Carolina. However, other equitable distribution jurisdictions have considered the issue and generally follow three different approaches in classifying such awards. *See Crocker v. Crocker*, 824 P.2d 1117 (Okla. 1991) (outlining the several approaches used among equitable distribution states). The first of these is the mechanistic approach, under which workers' compensation benefits awarded during coverture for a work-related injury occurring during the marriage are classified as marital property, while benefits received after separation generally are classified

as the separate property of the injured spouse. *See, e.g., Orszula v. Orszula*, 356 S.E.2d 114 (S.C. 1987). A few states follow the unitary approach, pursuant to which a workers' compensation award is treated as being uniquely personal to the injured spouse and is always characterized as his separate property. *See, e.g., Gloria B.S. v. Richard G.S.*, 458 A.2d 707 (Del. Fam. Ct. 1982).

A third method, the analytic approach, has been adopted in a number of equitable distribution states. *See, e.g., Crocker*, 824 P.2d at 1123; *In re Marriage of Smith*, 817 P.2d 641 (Colo. Ct. App. 1991); *Kirk v. Kirk*, 577 A.2d 976 (R.I. 1990); *Pauley v. Pauley*, 771 S.W.2d 105 (Mo. Ct. App. 1989); *Weisfeld v. Weisfeld*, 545 So. 2d 1341 (Fla. 1989); *Lentini v. Lentini*, 565 A.2d 701 (N.J. Super. Ct. App. Div. 1989); *Dees v. Dees*, 377 S.E.2d 845 (Ga. 1989); *Cummings v. Cummings*, 540 A.2d 778 (Me. 1988); *Queen v. Queen*, 521 A.2d 320 (Md. 1987); *Miller v. Miller*, 739 P.2d 163 (Alaska 1987). This approach classifies a workers' compensation award as either marital or separate property depending on what the award was intended to replace. Because workers' compensation benefits are generally treated as wage replacement, *see* 2 Arnold H. Rutkin *et al.*, Valuation & Distribution of Marital Property § 23.08[7] (John P. McCahey ed., 1992) (benefits are awarded to an employee "in lieu of lost wages and not as damages for pain, suffering, and monetary loss caused by the fault of the employer"), the majority of courts following the analytic approach have determined that the portion of the award which represents compensation for lost wages, loss of earning capacity, and medical expenses sustained during the marriage is marital property, and the portion representing payment for lost wages, loss of earning capacity, and medical expenses occurring after separation is the separate property of the injured spouse. *See, e.g., Crocker*, 824 P.2d at 1121.[1]

Of the various approaches used to classify workers' compensation awards, the analytic approach is most consistent with the policy behind North Carolina's Equitable Distribution Act recognizing marriage as a shared enterprise, the assets and debts of which

---

1. In at least one jurisdiction, certain workers' compensation benefits represent compensation for non-economic loss, and these benefits have been characterized as the separate property of the injured spouse under the analytic approach. *See, e.g., Kirk*, 577 A.2d at 978-79 (workers' compensation benefits received for disfigurement, loss of use of a limb, and rehabilitation of the injured worker are deemed to replace the separate property of the injured spouse and are accordingly classified as separate property).

should be fairly distributed upon divorce. *See Loeb v. Loeb*, 72 N.C. App. 205, 209, 324 S.E.2d 33, 37, *cert. denied*, 313 N.C. 508, 329 S.E.2d 393 (1985). Accordingly, we follow the growing number of jurisdictions which have adopted this approach. In addition, adoption of the analytic approach for the purpose of classifying workers' compensation awards is consistent with the manner in which North Carolina classifies personal injury awards. *See Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430 (1986) (adopting analytic approach for the purpose of classifying personal injury awards as well as life insurance accident benefits in the equitable distribution context); *Lilly v. Lilly*, 107 N.C. App. 484, --- S.E.2d --- (1992). Thus, whether all or any portion of a workers' compensation award constitutes the separate property of the injured spouse in North Carolina depends on the purpose of such awards under our workers' compensation law.

North Carolina's Workers' Compensation Act, N.C.G.S. §§ 97-1 *et seq.* (the Act), authorizes the payment of benefits to an employee for disability and medical expenses caused by a work-related injury. *Gray v. Carolina Freight Carriers, Inc.*, 105 N.C. App. 480, 483-84, 414 S.E.2d 102, 104 (1992). As used in the Act, the term "disability" means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C.G.S. § 97-2(9) (1991). "[P]ain is not in and of itself" compensable. *Jackson v. Fayetteville Area Sys. of Transp.*, 78 N.C. App. 412, 414, 337 S.E.2d 110, 112 (1985); *Branham v. Denny Roll & Panel Co.*, 223 N.C. 233, 236, 25 S.E.2d 865, 867-68 (1943). The Act provides for compensation to be paid during the injured employee's healing period, that is, the time that the employee is unable to work because of his injury. *Gray*, 105 N.C. App. at 483, 414 S.E.2d at 104. In addition, an employee may be entitled to an award either for permanent total disability, *see* N.C.G.S. § 97-29 (1991), or permanent partial disability, i.e., a diminished capacity to earn wages. *See* N.C.G.S. § 97-30 (1991) (authorizing compensation for partial disability which is proved by the employee); N.C.G.S. § 97-31 (1991) (authorizing compensation for partial disability caused by a scheduled injury); *see also Harrell v. Harriet & Henderson Yarns*, 314 N.C. 566, 575, 336 S.E.2d 47, 52-53 (1985) (losses included in the schedule contained in Section 97-31 are conclusively presumed to diminish wage-earning capacity); *Liles v. Charles Lee Byrd Logging Co.*, 309 N.C. 150, 154, 305 S.E.2d 523, 526 (1983) (compensable disfigurement presumed to diminish wage-

earning capacity). Awards for permanent disability may be paid in weekly installments or in one lump sum. N.C.G.S. § 97-44 (1991).

Because established precedent in North Carolina holds that compensation awarded under the Act is intended solely to replace medical expenses, lost wages, or the diminished capacity to earn wages—that is, economic loss—and is not compensation for pain and suffering or other non-economic loss, workers' compensation awards are to be allocated as follows for the purpose of equitable distribution. To the extent that an award replaces medical expenses, lost wages, or loss of earning capacity sustained during the marriage, it is marital property subject to equitable distribution. To the extent that the award replaces such economic loss occurring after separation, it is the separate property of the injured spouse. However, if the party claiming that the award is marital (i.e., the non-injured spouse) shows by a preponderance of the evidence that the award was acquired by the injured spouse during the marriage and before separation, then the entire award will be marital property unless the party claiming it to be separate property (i.e., the injured spouse) proves by a preponderance of the evidence that the award, or some portion of it, was intended to compensate him for economic loss occurring after the date of separation and is therefore his separate property. See Atkins, 102 N.C. App. at 206, 401 S.E.2d at 787-88; see also N.C.G.S. § 50-20(b)(1) (Supp. 1991) (property acquired by a spouse during marriage and before separation presumed to be marital unless rebutted by evidence that it is separate property); Ciobanu v. Ciobanu, 104 N.C. App. 461, 466, 409 S.E.2d 749, 752 (1991) (allocation of burdens of proof as set forth in Atkins consistent with 1991 amendment to Section 50-20(b)(1)).

In situations where a spouse is injured during the marriage and prior to separation, but does not receive a workers' compensation award until after the date of separation, such an award nevertheless constitutes marital property to the extent that the award represents compensation for economic loss occurring during the marriage and prior to separation. In such a case, because the award is not acquired during the marriage and prior to separation, the non-injured spouse will not have the benefit of the marital property presumption, and instead must, in order to support classification of the award as marital, prove by a preponderance of the evidence that all or some portion of the award is compensation for economic loss occurring during the marriage and before separation. See

*Johnson*, 317 N.C. at 454-55 n.4, 346 S.E.2d at 440 n.4 (property must be classified depending on proof presented to the trial court of the nature of such property).

In the instant case, the record indicates that Wife offered evidence in the form of an equitable distribution affidavit that Husband received a workers' compensation award, *see Pruitt v. Knight Publishing Co.*, 289 N.C. 254, 258, 221 S.E.2d 355, 358 (1976) (approved settlements made pursuant to Section 97-17 become an award), in March, 1989, three months prior to the parties' separation, and that the proceeds were presently in a Wachovia certificate of deposit. Thus, Wife met her burden under Section 50-20(b)(1) of proving that the award constitutes marital property. Husband's evidence established only that Husband received a workers' compensation award for permanent partial disability of the right hand in March, 1989, and that the proceeds from the award remained in a certificate of deposit at the time of trial. As previously discussed, awards for permanent partial disability represent compensation for loss of earning capacity, yet Husband presented no evidence regarding what portion, if any, of the award represents compensation for Husband's loss of earning capacity during the marriage versus after the parties' separation. In addition, there is no evidence in the record that Husband contended at trial that any portion of the award represented compensation for pain and suffering. Despite Husband's failure to prove that any portion of the award is his separate property, the trial court made a finding that Husband's award represented compensation for "pain and suffering, loss of use of [Husband's] arm, and permanent partial disability," and concluded that the entire award is Husband's separate property. This was error. *Nix v. Nix*, 80 N.C. App. 110, 112, 341 S.E.2d 116, 118 (1986) (trial court's findings must be supported by competent evidence in the record). However, in light of the fact that this opinion for the first time sets out the proper procedure for the allocation of workers' compensation awards, we remand this case in order to allow the parties to present evidence in this regard.

## II

### A

[2] Wife argues that the trial court erred in failing to give credit to Wife for the approximately $3,500.00 expended for a security system for the marital home since, according to Wife, the expense

was incurred "to maintain a liveable house in light of [Husband's] outrageous conduct."

One of the factors to be considered by the trial court in arriving at an equitable distribution of the marital property is the "acts of either party to maintain, preserve, develop, or expand . . . marital property during the period after separation of the parties and before the time of distribution." N.C.G.S. § 50-20(c)(11a) (Supp. 1991). When a party introduces evidence of a distributional factor, the trial court must consider the factor and make a finding of fact with regard to it. *Haywood v. Haywood*, 106 N.C. App. 91, 100, 415 S.E.2d 565, 571, *disc. rev. denied*, 331 N.C. 553, 418 S.E.2d 666 (1992).

In the instant case, the trial court considered Wife's evidence regarding the money spent by Wife on the installation of a security system and found that it was "for her own use and satisfaction after the date of separation . . . and . . . not . . . to maintain the marital home." The trial court, having followed the proper procedure, was within its discretion to make such a determination, and accordingly Wife's assignment of error in this regard is overruled.

B

[3] Wife argues that the trial court erred in classifying her new car as marital property. Wife contends that, because she purchased the automobile after the parties' separation, the property does not meet the definition of marital property set forth in N.C.G.S. § 50-20(b)(1) and is therefore her separate property.

Contrary to Wife's argument, whether the automobile is her separate property depends not on whether she acquired it after the parties' separation, "but whether the source of funds for [its] purchase was marital funds." *Mauser v. Mauser*, 75 N.C. App. 115, 118, 330 S.E.2d 63, 65 (1985). If the funds used to purchase the car were marital, then "their exchange for other property after separation does not convert them into separate property." *Phillips v. Phillips*, 73 N.C. App. 68, 75, 326 S.E.2d 57, 61 (1985). The trial court found that the funds used by Wife to purchase the car were marital, and the evidence in the record supports this finding. Accordingly, the trial court properly classified the car as marital property subject to equitable distribution.

FREEMAN v. FREEMAN

[107 N.C. App. 644 (1992)]

C

[4] Wife argues that the trial court erred in valuing Husband's 1990 Oldsmobile at $14,500.00. Although the parties agree that the car constitutes marital property to the extent that Husband used marital funds toward its purchase, they disagree as to the amount. Wife contends that, because Husband testified at trial that he used $15,000.00 in marital funds acquired from the sale of timber toward the purchase of the car, that the trial court should have valued the car at $15,000.00. Husband argues on appeal that the sales contract shows the purchase price actually paid by Husband (taking into account a $2,600.00 rebate) to be $14,500.00: $13,500.00 paid in cash and $1,000.00 financed.

Under the source of funds rule, an asset purchased after separation with marital funds is marital property to the extent that marital funds were used toward its purchase. *Mauser*, 75 N.C. App. at 118, 330 S.E.2d at 65; *Wade*, 72 N.C. App. at 381, 325 S.E.2d at 269. The trial court apparently valued Husband's automobile at $14,500.00 with this principle in mind, and relied on the sales contract rather than Husband's testimony in determining what amount of marital funds was expended on the car. We discern no error in the trial court's finding, as it is supported by competent evidence in the record.

III

[5] Husband argues that the trial court abused its discretion in ordering an equal distribution of the marital property. According to Husband, an unequal division of the marital property is supported by Husband's contribution to Wife's educational accomplishments, Husband's retirement in 1987 due to medical necessity, and Husband's $300.00 per month rent and utilities payments made prior to trial.

The distribution of marital property is committed to the sound discretion of the trial court, and in the absence of evidence that the trial court's decision in this regard is manifestly unsupported by reason, it will not be disturbed. *Lawing v. Lawing*, 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986). In the instant case, the trial court considered Husband's evidence of Wife's educational accomplishments and found that such accomplishments were "substantial but did not require large expenditures of money from accumulated savings or from [Husband's] current income." The court

also considered Husband's evidence of health problems and found that, although retired, Husband is capable of supporting himself if required to do so for financial reasons. Both of the trial court's challenged findings are supported by competent evidence in the record. Thus, the court properly considered and made findings of fact with regard to the relevant distributional factors under Section 50-20(c). *See* N.C.G.S. § 50-20(c)(3) and (7) (Supp. 1991); *see also Haywood*, 106 N.C. App. at 100, 415 S.E.2d at 571. In addition, the trial court's order indicates that the court considered Husband's post-separation living expenses but determined that such expenses did not require an unequal division of the marital property. Based on the evidence before the trial court, we discern no abuse of discretion by the court in ordering an equal division of the marital property.

However, because this case is remanded for reclassification of Husband's workers' compensation award in accordance with this opinion, if and to the extent that the trial court deems it necessary as a result of such reclassification, the court shall enter a new distribution order consistent with N.C.G.S. § 50-20(c). In all other respects, the trial court's equitable distribution order is affirmed.

Affirmed in part, reversed in part, and remanded.

Judges WELLS and ORR concur.