IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-908

Filed: 31 December 2020

Johnston County No. 15 CVS 1255

JERRY A. HAILEY, JR., Plaintiff

v.

TROPIC LEISURE CORP., MAGENS POINT RESORT, INC. d/b/a MAGENS POINT RESORT, RESORT RECOVERY, LLC, and JOHN JUREIDINI, Defendants

Appeal by Defendants from Orders entered 23 March 2018, 3 May 2018, 12 June 2018, 13 June 2018, 19 June 2018, 16 August 2018, and 20 November 2018, Judgment entered 28 June 2018, and Amended Judgment entered 16 August 2018, by Judge Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals 12 August 2020.

> *The Armstrong Law Firm, P.A., by L. Lamar Armstrong, III, and L. Lamar Armstrong, Jr., for plaintiff-appellee.*
>
> *Martin & Gifford, PLLC, by John L. Wait, for defendants-appellants.*

HAMPSON, Judge.

**Factual and Procedural Background**

Tropic Leisure Corp. (Tropic Leisure), Magens Point Resort, Inc. d/b/a Magens Point Resort (Magens Point), Resort Recovery, LLC (Resort Recovery), and John Jureidini (Jureidini) (collectively, Defendants) appeal from a Judgment and subsequent Amended Judgment entered upon a jury verdict in favor of Jerry A.

Hailey, Jr. (Plaintiff). In addition, Defendants also appeal from a number of interlocutory orders entered during the pendency of this litigation including the: Order on Cross Motions for Summary Judgment granting in part Plaintiff's Motion for Summary Judgment and denying in whole Defendants' Motion for Summary Judgment (Summary Judgment Order); Order Denying Defendants' JNOV Motion and Motion to Alter or Amend Judgment (JNOV Order); Order on Defendants' Pre-Trial Motions (Pretrial Order); and Orders Granting Plaintiff's Motion to Compel. Further, in a separate Notice of Appeal, Defendants also appeal the trial court's post-judgment Order Granting Plaintiff's Motion to Tax Attorney's Fees and Costs and Denying Defendants' Motion to Tax Attorney's Fees and Costs (Fees Order).

Following briefing and oral argument in this Court, Tropic Leisure and Magens Point filed a Motion to Withdraw Appeal in light of the Supreme Court of the Virgin Islands issuing its decision in *In re Hailey*, 2020 VI 14 (2020). In their Motion to Withdraw, Tropic Leisure and Magens Point request this Court allow their Motion because *In re Hailey*, "accomplishes what Defendants have requested from this Court on appeal . . . ." Whether or not this is an accurate assertion is a matter of some dispute between the parties. Nevertheless, in our discretion, we grant Tropic Leisure and Magens Point their requested relief and allow their Motion to withdraw from this appeal. N.C.R. App. P. 37(e)(2) (2020). However, Resort Recovery and Jureidini (the Appealing Defendants) remain parties to the appeal and continue to assert the same

arguments raised by all Defendants. Accordingly, as a practical matter, our review of the Judgment and Orders entered against Defendants is substantively unchanged.

For purposes of this appeal, the parties agree there are no disputes of material fact. Accordingly, the Record reflects the following relevant facts:

In February of 2015, Tropic Leisure and Magens Point sought to enforce a Default Judgment obtained against Plaintiff in North Carolina. *See Tropic Leisure Corp. v. Hailey*, 251 N.C. App. 915, 916, 796 S.E.2d 129, 130, *disc. rev. denied,* 369 N.C. 754, 799 S.E.2d 871, *cert. denied,* 138 S. Ct. 505, 199 L. Ed. 2d 385 (2017) (*Tropic Leisure I*). Plaintiff appealed enforcement of the Default Judgment in North Carolina, and this Court concluded the foreign Default Judgment was not entitled to full faith and credit in North Carolina "because the [Default] Judgment was obtained in a manner that denied [Plaintiff] his right to due process[.]" *Id.* at 924, 796 S.E.2d at 135. Specifically, this Court concluded the U.S. Virgin Islands' Small Claims Court, which did not allow a litigant to be represented by counsel under its No Attorney Rule, denied Plaintiff " 'the opportunity to be heard at a meaningful time and in a meaningful manner.' " *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d. 18, 32 (1976)). After this Court issued its opinion in *Tropic Leisure I*, Defendants petitioned for review at the North Carolina Supreme Court, 369 N.C. 754, 799 S.E.2d 871, and the United States Supreme Court, 138 S. Ct. 505, 199 L. Ed. 2d 385, both of which were denied.

The present appeal arises out of the same operative facts as *Tropic Leisure I*. Here, however, the underlying litigation began on 4 May 2015, several months after Defendants sought enforcement of their Default Judgment in North Carolina. This time, Plaintiff filed his Complaint alleging Defendants violated 42 U.S.C. § 1983 by depriving him of his constitutional rights "to due process and equal protection, and to his right to trial by jury[.]" Plaintiff alleged "[b]y acting jointly and participating with the USVI judicial authorities and using the USVI small claims system, defendants were acting under color of law" and, therefore, "defendants' conduct as private parties using unconstitutional state law constitutes 'state action.' "

The subsequent litigation involved extensive discovery resulting in several motions to compel and related sanctions. Plaintiff and Defendants both filed Motions for Summary Judgment. On 3 May 2018, the trial court, after taking the parties' briefs, supporting documents, and arguments under advisement, entered its written Summary Judgment Order denying Defendants' Motion for Summary Judgment and granting in part and denying in part Plaintiff's Motion for Partial Summary Judgment. The trial court took judicial notice of this Court's prior opinion in *Tropic Leisure I* and concluded "there [we]re no genuine issues of material fact concerning defendants' violation of plaintiff's constitutional right to due process and, further, that such violation was accomplished under color of law." The trial court further concluded, "as a matter of law, plaintiff is entitled to judgment against defendants on

his 42 U.S.C. § 1983 claim for at least nominal damages of $1.00." However, "genuine issues of material fact exist[ed] as to plaintiff's actual damages and as to punitive damages"; therefore, Plaintiff's claims for actual and punitive damages remained for jury trial.

Consistent with the Summary Judgment Order, Plaintiff's claims for actual and punitive damages proceeded in two parts, with the compensatory damage phase beginning on 11 June 2018. On 15 June 2018, the jury returned a verdict finding Defendants, "under the color of law, subject[ed] [Plaintiff] to a deprivation of a right secured by the United States Constitution." The jury found Plaintiff was entitled to $29,311.00 in compensatory damages. The trial court proceeded to the punitive phase and on 19 June 2018, the jury returned a verdict finding Plaintiff was not entitled to punitive damages. The trial court entered written Judgment on both jury verdicts on 28 June 2018, and ordered interest on the compensatory award of $29,311.00 to be taxed at "the legal rate of eight percent (8%) from the date the complaint was filed on 4 May 2015 until this sum and accrued interest is paid in full."

On 29 June 2018, Plaintiff filed a Motion to Tax Costs and Attorney's Fees pursuant to 42 U.S.C. § 1988. On 12 July 2018, Defendants filed a competing Motion for Attorney's Fees and Court Costs. The same day, Defendants also filed a Motion for JNOV and Motion to Alter or Amend Judgment. Defendants first argued under Rule 50(b) of the North Carolina Rules of Civil Procedure the trial court should set

aside the jury verdict in favor of Plaintiff and enter judgment in favor of Defendants, reducing compensatory damages from $29,311.00 to $0.00. In the alternative, under Rule 59(e) Defendants requested the trial court alter or amend the Summary Judgment Order and the Judgment on the Jury Verdict to reflect judgment was entered in favor of Defendants' claims. Defendants also requested Judgment on the Jury Verdict be amended to disallow prejudgment interest.

On 14 August 2018, the trial court held a hearing on Defendants' Motion for JNOV and Motion to Alter or Amend the Judgment, and on 16 August 2018, the trial court entered its JNOV Order denying Defendants' Motion for JNOV and Motion to Alter or Amend the Judgment. However, the trial court did enter an Amended Judgment, with Plaintiff's consent, to reflect the proper post-judgment interest rate. Plaintiff's and Defendants' competing motions for attorney's fees also came on for hearing on 14 August 2018. On 20 November 2018, the trial court entered its written Fees Order granting Plaintiff's motion for attorney's fees and court costs pursuant to 42 U.S.C. § 1988 and denying Defendants' request for fees and costs.

Defendants filed two separate Notices of Appeal, first on 12 September 2018, and a second from the Fees Order on 19 December 2018.[1]

## **Issues**

---

[1] In their 12 September 2018 Notice of Appeal, Defendants noticed their intent to appeal from twenty-eight different Orders. We, however, only address the Orders and arguments actually raised by Defendants in briefing and deem the remainder abandoned on appeal. N.C.R. App. P. 28(a) (2020).

The Appealing Defendants assert six issues on appeal. The primary issue is (I) whether the trial court erred in granting partial Summary Judgment and concluding under 42 U.S.C. § 1983 that Defendants acted under color of law in depriving Plaintiff of his right to due process. The Appealing Defendants also raise the additional issues of whether: (II) the trial court abused its discretion in awarding Plaintiff attorney's fees pursuant to N.C.R. Civ. P. 37 upon a Motion to Compel; (III) the trial court abused its discretion in denying Resort Recovery's Motion to Set Aside the Entry of Default; (IV) the trial court erred during the compensatory phase of the trial (A) when it instructed the jury on proximate cause and (B) abused its discretion when it excluded proffered deposition testimony and admitted expert testimony regarding reasonableness of fees; (V) there was sufficient evidence of proximate cause presented at trial for the trial court to deny Defendants' Motion for JNOV and to Alter or Amend the Judgment; (VI) the trial court's Fees Order was based on an abuse of discretion.

### Analysis

### I. Summary Judgment

The Appealing Defendants argue the trial court erred in denying its Motion for Summary Judgment and in granting, in part, Plaintiff's Motion for Summary Judgment on the issue of Defendants' liability under Section 1983. We review the trial court's ruling on these cross motions for summary judgment de novo. *Forbis v.*

*Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007). When conducting a de novo

review, "the court considers the matter anew and freely substitutes its own judgment

for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d

290, 294 (2008) (citation and quotation marks omitted).

The parties agree the issue before this Court is a question of law arising under

42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983 (2019).

Under Section 1983, there are

> two elements that are necessary for recovery. First, the plaintiff
> must prove that the defendant has deprived him of a right secured
> by the "Constitution and laws" of the United States. Second, the
> plaintiff must show that the defendant deprived him of this
> constitutional right "under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory." This
> second element requires that the plaintiff show that the
> defendant acted "under color of law."

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 26 L. Ed. 2d 142, 150 (1970) (citations

omitted). "In cases under § 1983, 'under color' of law has consistently been treated as

the same thing as the 'state action' required under the Fourteenth Amendment."

*United States v. Price*, 383 U.S. 787, 794 n.7, 16 L. Ed. 2d 267, 272 n.7 (1966); *see Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 935, 73 L. Ed. 2d 482, 494 (1982) ("If the challenged conduct of respondents constitutes state action as delimited by our prior decisions, then that conduct was also action under color of state law and will support a suit under § 1983."); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 n.2, 148 L. Ed. 2d 807, 817 n.2 (2001).

In *Tropic Leisure I*, this Court held: "because the [Default] Judgment was obtained in a manner that denied [Plaintiff] his right to due process, it is not entitled to full faith and credit in North Carolina." *Tropic Leisure I*, 251 N.C. App. at 924, 796 S.E.2d at 135. Accordingly, the crux of the issue before this Court is based upon the second element—whether Defendants acted under color of law.

> [T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.

*Dennis v. Sparks*, 449 U.S. 24, 27-28, 66 L. Ed. 2d 185, 189-90 (1980) (citations omitted). However, the Supreme Court in *Dennis* cautioned, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Id.* at 28, 66 L. Ed. 2d at 189-90. Instead, there must be an additional level of engagement between the private party and the

state officials for the acts of the private party to arise to state action or action "under color of law."

In his complaint, Plaintiff alleged Defendants' "unconstitutional deprivation of [Plaintiff's] rights to due process and equal protection, and to his right to trial by jury," violated 42 U.S.C. § 1983. Plaintiff specifically alleged Defendants acted under color of law by "acting jointly and participating with USVI judicial authorities and using the USVI small claims system[.]" And, therefore, Defendants' conduct amounted to state action because it relied upon "unconstitutional state law[.]" Plaintiff filed his Motion for Summary Judgment on this basis and argued under the Supreme Court's opinion in *Lugar v. Edmonson Oil Co.*, Defendants' actions were under color of law. In their cross Motion for Summary Judgment, Defendants contended Plaintiff had not sufficiently demonstrated Defendants acted "under color of law" and, therefore, Defendants were entitled to summary judgment. The trial court concluded, in Plaintiff's favor, "there [were] no genuine issues of material fact concerning [Defendants]' violation of [Plaintiff's] constitutional right to due process and, further, that such violation was accomplished under color of law."

On appeal, Plaintiff and Defendants argue competing standards for what qualifies as action "under color of law." Defendants argue the correct standard is articulated in *Adickes* and requires Plaintiff show Defendants " 'somehow reached an understanding' or engaged in 'joint action' with a state authority in order to deny

plaintiff's constitutional rights." Defendants further contend Plaintiff has not sufficiently demonstrated Defendants' and the USVI court system "somehow reached an understanding" to deprive Plaintiff of his right to counsel. *Adickes*, 398 U.S. at 152, 26 L. Ed. 2d at 151. Defendants also argue Plaintiff's reliance on *Lugar* was misplaced because *Lugar* was expressly limited to prejudgment attachments.

Indeed, as Defendants assert, the *Lugar* Court expressly stated: "[W]e do not hold today that 'a private party's mere invocation of state legal procedures constitutes "joint participation" or "conspiracy" with state officials satisfying the § 1983 requirement of action "under color of law." ' The holding today . . . is limited to the particular context of prejudgment attachment." *Lugar*, 457 U.S. at 939 n.21, 73 L. Ed. 2d at 497 n.21 (citations omitted). The Supreme Court has not, however, limited its subsequent discussions of *Lugar's* holding on state action solely to cases involving prejudgment attachments. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928, 204 L. Ed. 2d 405, 413 (2019) ("Under this Court's cases, a private entity can qualify as a state actor in a few limited circumstances—including, for example, . . . (iii) when the government acts jointly with the private entity[.]" (citing *Lugar* 457 U. S. at 941-942, 73 L. Ed. 2d at 497-98)); *Brentwood Acad.*, 531 U.S. at 296, 148 L. Ed. 2d at 817; *Nat'l Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179, 199, 102 L. Ed. 2d 469, 489 (1988); *see also Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 622, 114 L. Ed. 2d 660, 674 (1991) ("[O]ur cases have found state action when private

parties make extensive use of state procedures with 'the overt, significant assistance of state officials.' " (quoting *Tulsa Professional Collection Servs. Inc. v. Pope*, 485 U.S. 478, 486, 99 L. Ed. 2d 565, 576) (citing, *inter alia*, *Lugar*, 457 U.S. at 922, 73 L. Ed. 2d at 482)). Thus, although as Defendants argue *Lugar* itself is expressly limited to cases involving prejudgment attachments, the Supreme Court has not so limited its subsequent reasoning; *Lugar's* discussion of state action remains instructive.

In *Lugar*, the Supreme Court considered whether Edmonson Oil Co. acted "under color of law" for purposes of Section 1983 liability when it attached Lugar's property pursuant to a Virginia statute authorizing prejudgment attachments. 457 U.S. at 924-25, 73 L. Ed. 2d at 487. *Lugar* outlined a two-part, fair-attribution test for determining whether "state action" may be fairly attributed to a private party:

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of 'fair attribution.' First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 937, 73 L. Ed. 2d at 495 (citations omitted). The Court discussed its various tests for "state action" as articulated through its jurisprudence:

> [T]he Court has articulated a number of different factors or tests in different contexts: e. g., the "public function" test, see Terry v. Adams, 345 U.S. 461, [ ] 97 L. Ed. 1152 (1953); Marsh v. Alabama, 326 U.S. 501 [ ] 90 L. Ed. 265 (1946); the "state compulsion" test, see Adickes v. S. H. Kress & Co., 398 U.S., at 170, 26 L. Ed. 2d 142; the "nexus" test, see Jackson v. Metropolitan Edison Co., 419 U.S. 345 [ ] 42 L. Ed. 2d 477 (1974); Burton v. Wilmington Parking Authority, 365 U.S. 715 [ ] 6 L. Ed. 2d 45 (1961); and, in the case of prejudgment attachments, a "joint action test," Flagg Brothers, 436 U.S., at 157 [ ] 56 L. Ed. 2d 185.

*Id.* at 939, 73 L. Ed. 2d at 496-97. The Court continued to note, however, that regardless of the exact context, the state-action inquiry is a "necessarily fact-bound inquiry that confronts the Court . . . ." *Id.* at 939, 73 L. Ed. 2d at 497 (citations omitted).

More recently, the Supreme Court opined upon the state-action issue as it relates to Section 1983:

> In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and *the question is whether the State was sufficiently involved to treat that decisive conduct as state action.* This may occur if the State creates the legal framework governing the conduct, if it delegates its authority to the private actor, or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior. Thus, in the usual case we ask whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor.

*Nat'l Collegiate Ath. Ass'n,* 488 U.S at 192, 102 L. Ed. 2d at 484-85 (emphasis added) (citations omitted).

Accordingly, under the framework articulated by our Supreme Court, this Court must engage in a fact-bound inquiry into whether Defendants were acting "under color of law" sufficient to confer upon them status as state actors. Here, Plaintiff contended the U.S. Virgin Island's small claims court system—a state actor—coached Defendants—private parties—via Jureidini through the small claims process, and in doing so was acting jointly with the private entity sufficient to confer upon Defendants the status of state actor. Thus, the ultimate question is whether Defendants were "jointly engaged with state officials in the challenged action," *Dennis*, 449 U.S. at 27-28, 66 L. Ed. 2d at 189, considering "whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor." *Nat'l Collegiate Ath. Ass'n*, 488 U.S. at 192, 102 L. Ed. 2d at 485 (footnote omitted).

Jureidini's deposition testimony is instructive to our analysis. Specifically, Jureidini testified:

> [Plaintiff's counsel]. So you're collecting dues under the arrogance of saying the six year statute of limitations applies and you have no clue when it even starts.
>
> [Jureidini]. *I went with what the magistrates told me. . . .* And it wouldn't be arrogance, it would have been -- listen, this is what we are submitting, is it correct and they would say "Well, you can collect this or you can't collect that." And they asked me to back up everything that -- that I was claiming for a fee.
>
> . . . .

The judges -- the magistrates let me go back six years and collect six years. If it was past six years, I couldn't collect on it.

Now I wanted to bring over another point, too. When I started filing these, they got two magistrates like within a month. . . . So, you know, they were -- well, I'll say, probably figuring out the rules, too, going into it. But, you know, along the way, *we came up with what was fair* and what I could collect and what I could not collect.

. . . .

[Plaintiff's counsel]. . . . . So you can just file whatever you want and, hey, if it ain't right, the magistrate is going to say, "We're not going to let you do that, John?"

[Jureidini]. Yeah. That's pretty much how --

. . . .

In the very beginning we were sitting down with or appearing before a magistrate court, a magistrate themself, you know. We went through a lot of stuff and discussed a lot of different things and, you know, at the end of the day, I wanted to be fair. And so I was like, what can I charge. I mean, they said, you know, partial rental credits, they said you can only go back six years. Well, okay, so that's what it was.

Then again, when Plaintiff's counsel questioned Jureidini regarding the six-year statute of limitations, Jureidini replied, "That's the way the magistrates explained it to me." "They explained it to you?" Jureidini: "Correct." On the topic of collection fees, Plaintiff's counsel questioned, "then you've got five hundred dollars ($500) collection . . ." And Jureidini acknowledged: "Yeah, I thought -- I thought at

the beginning that I was able to charge that, *but the magistrate set me straight that I couldn't. They -- they would not accept that.*" (emphasis added).

The process Jureidini described is not the "mere invocation of state legal procedures" cautioned against in *Lugar* and *Dennis*. *Lugar*, 457 U.S. at 939 n. 21, 73 L. Ed. 2d at 497; *Dennis*, 449 U.S. at 28, 66 L. Ed. 2d at 190. Nor does Jureidini's testimony simply describe friendly reminders by court officials that actions in small claims court must not exceed ten thousand dollars. Instead, Jureidini describes repeated instances by U.S. Virgin Islands small claims court officials not only directing Jureidini in *how* to file collection actions on behalf of Defendants, but further coaching Jureidini on *what* to include in the contents of his filings. The magistrates advised Jureidini regarding the statute of limitations and directed what claims would or would not be barred. "*They*"—meaning the USVI small claims magistrates—instructed Jureidini to charge partial rental credits and "set [Jureidini] straight" by advising him he could not charge a collection fee.

Thus, even setting aside *Lugar's* "fair attribution test" as Defendants contend we must, Jureidini's testimony establishes, under the standards set forth in *Adickes*, *Dennis*, and more recently *Nat'l Collegiate Ath. Ass'n*, that Defendants were acting under color of law. Not only did the U.S. Virgin Island's small claims court system "create[] the legal framework governing the conduct," *Nat'l Collegiate Ath. Ass'n*, 488 U.S at 192, 102 L. Ed. 2d at 485, it actively participated in counseling Jureidini

through the filing and default judgment process. This is sufficiently state action. The trial court properly granted Summary Judgment in favor of Plaintiff on this issue. Because we affirm the trial court's Summary Judgment Order, we turn to Appealing Defendants' remaining arguments.

## II. Discovery Sanctions

Appealing Defendants contend the trial court abused its discretion in awarding Plaintiff discovery sanctions on 23 March 2018, and 12 June 2018, pursuant to Plaintiff's motions to compel under N.C.R. Civ. P. 37. We review a trial court's award of sanctions pursuant to a motion to compel discovery for abuse of discretion. *Graham v. Rogers*, 121 N.C. App. 460, 465, 466 S.E.2d 290, 292 (1996).

> Once a motion to compel is granted, the court *shall* require the party or deponent whose conduct necessitated the motion to pay the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that party's opposition to the motion was substantially justified or if circumstances make an award of expenses unjust.

*Id.* (emphasis added) (citing N.C.R. Civ. P. 37(a)(4)).

In the present case, the trial court issued several motions to compel discovery. In two separate orders, one Order Granting Plaintiff's Motion to Compel, entered 23 March 2018, and one Order Granting Plaintiff's Motion for Sanctions, entered 12 June 2018, the trial court granted Plaintiff's requests for costs and attorney's fees related to the respective motions to compel. On appeal, Defendants do not argue the award of expenses was unjust. Instead, Defendants contend paralegal costs in the

amount of $4,750.00 from the 23 March Order were an abuse of discretion because "Plaintiff's counsel never mentioned that he would attempt to seek such costs." Defendants contend the additional discovery sanction in the amount of $9,735.00, awarded in the 12 June Order, entered after Plaintiff filed a fourth motion to compel, "was another example of Plaintiff's counsel's overbilling." Defendants' arguments ignore the requirements of Rule 37, which directs, upon the grant of a motion to compel,

> the court *shall*, after opportunity for hearing, *require* the party or deponent whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, *unless* the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

N.C. Gen. Stat. § 1-1A, Rule 37 (2019) (emphasis added). Defendants make no argument they were justified in their opposition to the motions to compel. Accordingly, the trial court's award of monetary sanctions, limited to the reasonable expenses incurred, was not an abuse of discretion.

### III. Entry of Default

The Appealing Defendants also contend the trial court abused its discretion in denying Resort Recovery's Motion to Set Aside the Entry of Default. "The decision of whether to set aside an entry of default . . . is within the sound discretion of the trial court [and] therefore will not be disturbed on appeal absent a showing of abuse of that discretion." *Swan Beach Corolla, L.L.C. v. Cty. of Currituck*, 255 N.C. App. 837,

841, 805 S.E.2d 743, 746 (2017), *aff'd per curiam*, 371 N.C. 110, 813 S.E.2d 217 (2018) (citations and quotation marks omitted). "A trial court abuses its discretion when the party appealing the denial of its motion to set aside the entry of default demonstrates that the trial court did not apply the proper 'good cause' standard in its determination." *Id.* at 842, 805 S.E.2d at 747 (citation omitted).

Here, Defendants summarily argue the trial court abused its discretion because Plaintiff would not be prejudiced by setting aside the default, Resort Recovery could not afford to hire counsel, and due to the law's general preference for hearing a case on the merits. Defendants provide no authority to support their argument. Furthermore, Defendants do not argue, let alone demonstrate, the trial court failed to apply a proper good cause standard in denying Resort Recovery's Motion to Set Aside Default. *See id.* Accordingly, the trial court's Pretrial Order denying Defendants' Motion to Set Aside Default as to Resort Recovery, LLC, is affirmed.

## IV. Compensatory Damage Phase

Next, Appealing Defendants contend the trial court "committed numerous prejudicial errors during the compensatory phase of the trial" thereby entitling Defendants to a new trial. Defendants first assert the trial court erred in failing to instruct the jury in accordance with Defendants' proposed instructions on intervening causes. Defendants also argue the trial court abused its discretion when it excluded

Defendants' proffered video deposition and when it admitted the testimony of Robert Orr, a former Justice of the Supreme Court of North Carolina.

*A. Jury Instructions*

"On appeal, this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed." *Hammel v. USF Dugan, Inc.*, 178 N.C. App. 344, 347, 631 S.E.2d 174, 177 (2006) (citations and quotation marks omitted). "[W]hile not obliged to adopt the precise language of the prayer, [the trial court] is nevertheless required to give the instruction, in substance at least[.]" *Erie Ins. Exch. v. Bledsoe*, 141 N.C. App. 331, 335, 540 S.E.2d 57, 60 (2000) (citations omitted). "Failure to give a requested and appropriate jury instruction is reversible error if the requesting party is prejudiced as a result of the omission." *Outlaw v. Johnson*, 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008) (citations omitted).

In the present case, Defendants contend the trial court erred when it did not instruct the jury, as follows, on intervening causes:

> To find that Defendants' act [or omission] caused plaintiff's injury, you need not find that Defendants' act [or omission] was the nearest cause, either in time or space. However, if plaintiff's injury was caused by a later, independent event that intervened between Defendants' act [or omission] and plaintiff's injury, Defendants are not liable unless the injury was reasonably foreseeable by the Defendants.

During the charge conference, counsel for Defendants contended there were three intervening causes that warranted instruction to the jury: Hailey himself, "by his failing to consult with a Virgin Islands attorney before deciding to take the actions he did in North Carolina"; this Court in *Tropic Leisure I*; and the U.S. Virgin Islands court system. The trial court declined to instruct the jury in accordance with Defendants' proposed instructions; however, the trial court instructed the jury on proximate cause as follows:

> A proximate cause is a cause which in a natural and continuous sequence produces a person's damage and is a cause which a reasonable and prudent person could have foreseen would probably produce such damage or some similar injurious result. There may be more than one proximate cause of damage; therefore, the plaintiff need not prove that the defendants' conduct was the sole proximate cause of the damage. The plaintiff must prove by the greater weight of the evidence only that the defendants' conduct was a proximate cause.

Defendants contend the trial court's instruction is error because "the issue of whether Mr. Hailey, this Court, or the USVI court system were intervening causes in this case was litigated throughout the trial and supported by the evidence." However, Defendants fail to articulate both how the trial court's actual instruction did not incorporate, in substance, their request on intervening causes and further, how they were prejudiced as a result of the trial court's omission. *See Outlaw*, 190 N.C. App. at 243, 660 S.E.2d at 559. Indeed, the trial court stated: "There may be more than one proximate cause of damage . . . plaintiff must prove by the greater weight of the

evidence only that the defendants' conduct was *a* proximate cause." (emphasis added). The trial court's actual instruction also included the element of foreseeability, as did Defendants' proposed instruction. Accordingly, the trial court did not err in its instructions to the jury.

### B. Admission and Exclusion of Evidence

Appealing Defendants further contend the trial court abused its discretion in excluding Defendants' proffered video deposition of Russell Pate and by allowing Plaintiff's expert in North Carolina appellate practice and procedure, former-Justice Robert Orr, to testify regarding the reasonableness of Plaintiff's counsel's attorney's fees.

"We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008). Similarly, a trial court "is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony" and will only be reversed upon abuse of discretion. *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984).

Defendants proffered a video deposition of Russell Pate, 2016 president of the U.S. Virgin Islands Bar Association, arguing it was relevant because it addressed proximate cause and foreseeability. Pursuant to a pretrial motion in limine filed by Plaintiff, the trial court excluded the deposition testimony, concluding it lacked

adequate foundation, was speculative, and ultimately "irrelevant in light of the [trial court's] granting of partial summary judgment on the issue of liability." The trial court also concluded, pursuant to Rule 403, even "if any of Pate's testimony is relevant, it's [sic] probative value is substantially outweighed by its unfair prejudice, confusion of issues, and probable misleading the jury." Defendants again attempted to introduce Pate's testimony during trial; again, the trial court denied Defendants' request.

Although Defendants argue the trial court's decision was an abuse of discretion, Defendants do not provide any arguments explaining why. Instead, Defendants simply assert the testimony was "relevant and critical to Defendants' case on the issue of compensatory damages." Accordingly, the trial court did not abuse its discretion in excluding Pate's testimony.

Defendants also assert the trial court abused its discretion in admitting former-Justice Orr's testimony regarding the reasonableness of Plaintiff's counsel's attorney's fees, contending it was "not relevant and highly prejudicial" because former-Justice Orr "had no first hand knowledge about Mr. Hailey's legal costs in *Tropic Leisure I*." Former-Justice Orr was tendered and accepted without objection as an expert in "appellate practice and procedure in North Carolina." Former-Justice Orr testified after reviewing the Record, filings, *Tropic Leisure I*, and the various rates of Plaintiff's counsel's for work done by attorneys and paralegals, that the

amount of attorney's fees Plaintiff requested was reasonable. Defendants, however, objected on the basis that as an expert in appellate practice, former-Justice Orr could not give an opinion on the reasonableness of trial fees, which the trial court overruled.

Again, Defendants do not explain how the trial court's ruling was an abuse of discretion. Rule 702, which governs expert testimony, provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2019). Rule 702 does not require an expert have firsthand knowledge before providing his or her opinion; moreover, former-Justice Orr's testimony concerning the reasonableness of Plaintiff's attorney's fees is within the purview of his expertise as an appellate practitioner. We discern no abuse of discretion on behalf of the trial court.

### V. JNOV

"On appeal the standard of review for a JNOV is the same as that for a directed verdict, that is whether the evidence was sufficient to go to the jury." *Tomika Invs.,*

*Inc. v. Macedonia True Vine Pent. Holiness Ch. of God, Inc.*, 136 N.C. App. 493, 498-99, 524 S.E.2d 591, 595 (2000).

> In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.

*Turner v. Duke University*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989 (citation omitted).

The Appealing Defendants argue the trial court erred in denying Defendants' Motion for Directed Verdict, Motion for JNOV, and Motion to Alter or Amend the Judgment. Defendants contend there is not sufficient evidence they proximately caused Plaintiff's alleged damages as required for anything more than nominal damages under Section 1983.

"[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306, 91 L. Ed. 2d 249, 258 (1986) (citations omitted). "[T]he causal link in § 1983 cases is analogous to proximate cause." *Shaw v. Stroud*, 13 F.3d 791, 800 (4th Cir. 1994). "Proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular

case." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979) (alterations, citations, and quotation marks omitted). Moreover, "[i]n most cases involving private defendants, there is no proximate cause issue at all. . . . The issue is whether the particular conduct is purely private, and thus immune from section 1983 liability, or is state action." *Arnold v. Intern. Business Machine*, 637 F.2d 1350, 1356 (9th Cir. 1981).

Here, considering all evidence in the light most favorable to Plaintiff, there is sufficient evidence to reach the jury on the question of whether Defendants were the proximate cause of Plaintiff's alleged damages—the attorney's fees and costs stemming from the litigation in *Tropic Leisure I*. Defendants obtained a Default Judgment against Plaintiff and subsequently sought to enforce the Default Judgment in North Carolina, initiating the action in *Tropic Leisure I*. Defendants argue intervening causes—Plaintiff's own actions, our decision in *Tropic Leisure I*, and the USVI Small Claims Court—effectively broke the casual chain. However, "[a]n efficient intervening cause is a new proximate cause. It must be an independent force which *entirely supersedes* the original action and renders its effect in the chain of causation remote." *Adams v. Mills*, 312 N.C. 181, 194, 322 S.E.2d 164, 173 (1984) (emphasis added) (citations omitted). Defendants do not demonstrate that any of the alleged intervening causes were sufficient to *supersede* Defendants' actions.

Therefore, there was sufficient evidence to reach the jury on the issue of proximate cause; the trial court's JNOV Order is affirmed.

## VI. Attorney's Fees

In the present case, the trial court entered its Amended Judgment on the jury verdicts and JNOV Order on 16 August 2018, and Defendants timely filed Notice of Appeal on 12 September 2018. The parties' cross motions for attorney's fees remained pending, and the trial court entered its written Fees Order on 20 November 2018, which granted Plaintiff's attorney's fees on the basis Plaintiff was the "prevailing party" under 42 U.S.C. § 1983 as required by 42 U.S.C. § 1988. 42 U.S.C. § 1988(b) (2019) ("the court, in its discretion, may allow the *prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs" (emphasis added)).

Although not an argument raised by the parties, we conclude the trial court lacked jurisdiction to enter its award of attorney's fees once Defendants filed their first Notice of Appeal from the underlying judgments. "Jurisdiction of the court over the subject matter of an action is the most critical aspect of the court's authority to act." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987). "Every court necessarily has the inherent judicial power to inquire into, hear and determine questions of its own jurisdiction, whether of law or fact, the decision of which is necessary to determine the questions of its jurisdiction[,]" therefore, "[t]he question

of subject matter jurisdiction may be raised at any time[.]" *Lemmerman v. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85 (1986).

Generally, "timely notice of appeal removes jurisdiction from the trial court and places it in the appellate court." *McClure v. County of Jackson*, 185 N.C. App. 462, 469, 648 S.E.2d 546, 550 (2007) (citation and quotation marks omitted). N.C. Gen. Stat. § 1-294 provides an exception for matters "not affected by the judgment appealed from." N.C. Gen. Stat. § 1-294 (2019). However, "[w]hen, as in the instant case, the award of attorney's fees was based upon the plaintiff being the 'prevailing party' in the proceedings, the exception set forth in N.C. Gen. Stat. § 1-294 is not applicable." *McClure*, 185 N.C. App. at 471, 648 S.E.2d at 551.

Accordingly, the trial court was divested of jurisdiction to enter the Fees Order when Defendants filed their first Notice of Appeal. This Court has expressly held the exception provided by N.C. Gen. Stat. § 1-294 is inapplicable in cases like the present where the decision to grant or deny awards of attorney's fees is based on a party's status as the "prevailing party." *See id.* Because it was entered without jurisdiction, we vacate the Fees Order and remand the matter to the trial court to reconsider the award, including any fees and costs incurred on appeal claimed by Plaintiff. *C.f. Fungaroli v. Fungaroli,* 53 N.C. App. 270, 273, 280 S.E.2d 787, 790 (1981) (affirming a trial court's award of appellate attorney's fees, noting "an award of attorney's fees for services performed on appeal should ordinarily be granted, provided the general

statutory requirements for such an award are duly met"); *Vasquez v. Fleming*, 617 F.2d 334, 336 (3d Cir. 1980) ("[A]ttorney fees may be awarded to the prevailing party under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, by a court of appeals for a successful appeal.").

## **Conclusion**

Accordingly, for the foregoing reasons, the trial court's Summary Judgment Order, 23 March Order Granting Plaintiff's Motion to Compel, 12 June Order Granting Plaintiff's Motion for Sanctions, Pretrial Order, and JNOV Order are affirmed. Further, we conclude there was no error in the entry of the Amended Judgment (amending the prior Judgment) upon the jury verdict against Defendants. We vacate the Fees Order and remand this matter to the trial court for reconsideration.

AFFIRMED IN PART; NO ERROR IN PART; VACATED IN PART AND REMANDED.

Judges STROUD and YOUNG concur.